# United States Bankruptcy Court
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | : | |
| STEPHEN SCOTT | : | Case No. 20−10911−BFK |
| Debtor | : | |
| SCOTT H. DONOVAN, Administrator Ancillary Estate of Anna Simon Hodges | : | |
| Plaintiff | : | |
| -v- | : | Adversary No. _____ |
| STEPHEN SCOTT | : | |
| Defendant | : | |

## COMPLAINT TO DETERMINE CLAIM AND DISCHARGEABILITY

COMES NOW the Plaintiff, SCOTT H. DONOVAN, Administrator of the Ancillary Estate of Anna Simon Hodges (hereinafter the "Administrator") and pursuant to 11U.S.C. §523 and Fed. R. Bankr. P. 4007, files this complaint to determine dischargeability against the Debtor/Defendant, STEPHEN SCOTT (hereinafter the "Defendant" or "Mr. Scott") and in support thereof states as follows:

**Parties, Jurisdiction and Venue**

1. Plaintiff Scott H. Donovan is an attorney licensed to practice in the Commonwealth of Virginia. On August 20, 2019, the Clerk of Circuit Court of Prince William County, Virginia qualified and appointed Mr. Donovan the Administrator of Ancillary Virginia Estate of Anna Simon Hodges.

2. The Debtor/Defendant, Stephen Scott, is a natural person, who, upon information and belief is a resident of and domiciled in the County of Prince William, Commonwealth of Virginia, and within this district and division.

3. On March 25, 2020 (the "Petition Date") the Defendant filed his petition for relief pursuant to chapter 7 of title 11 of the United States Code.

4. This court has proper jurisdiction over the matters complained of herein pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(b)(2)(I).

5. Venue is proper in this District pursuant to 11 U.S.C. §1409(a).

## Procedural Background and Previous Cases

6. Anna Simon Hodges (also known by the names Annie Hodges and Hordges Anna), a widow, a native of Hungary, was a long-time resident of Prince William County, Virginia. Mrs. Hodges died on October 14, 2018, at the age of ninety- five. At the time of her death, Mrs. Hodges was residing in Hungary, where she had moved a few years prior to live among relatives.

7. On September 1, 2017, Stephen Scott filed in this Court a civil action against Mrs. Hodges and two other persons, Gergo Horvath and Dr. Andras Erdei. That action (hereinafter, "1st Former Action"), was assigned the Case Number CL17-6937.

8. The 1st Former Action (styled as an interpleader, though funds were never placed in the keeping of the Court) concerned the ownership of $50,000.00 (hereinafter the "Funds") in the possession of Mr. Scott, which came from two checks drawn on Mrs. Hodges' Woodbridge, Virginia BB&T account. Mr. Scott claimed that Mrs. Hodges had written him these checks as gifts, but that Mr. Horvath (Mrs. Hodges' nephew) and Dr. Erdei (Mrs. Hodges' lawyer) had been making personal claims upon the money. Mr. Scott thus sued to be declared the rightful owner of the $50,000.00 in the face of these alleged adverse claims.

9. Mrs. Hodges filed an answer and a counterclaim denying that the Funds were a gift, denying Mr. Scott's right to maintain possession of the Funds, and requesting that the Funds be returned to her possession.

10. By this Court's order of March 22, 2019, summary judgment was entered against Dr. Erdei and Mr. Horvath, both of whom acknowledged that they had no personal right to the funds at issue.

11. Also on March 22, 2019, Mr. Scott nonsuited the complaint in the 1st Former Action, thus leaving Mrs. Hodges' counterclaim as the only matter to be litigated.

12. On July 12, 2019, the Court entered a voluntary nonsuit of the counterclaim of Mrs. Hodges.  No prior nonsuit had been taken by Mrs. Hodges or her personal representative.

13. On January 6, 2020, less than six (6) months next after the entry of the non-suit with respect to the counterclaim in this 1st Former Action, the Administrator filed a complaint seeking to recover from Mr. Scott the Funds. Such case was still pending on the Petition Date and was stay by virtue of 11 U.S.C. §362.

**Allegations of Fact Applicable to All Counts**

14. Mr. Scott, a mail carrier with the United States Post Office, delivered mail to Mrs. Hodges' house in Prince William County from 2005 until 2009. Mr. Scott and Mrs. Hodges were also neighbors.

15. During the time Mr. Scott was serving Mrs. Hodges' route, the two became friendly, often engaging in conversation.

16. Mr. Scott at times offered Mrs. Hodges assistance with chores, and otherwise showed her kindness.

17. This friendly relationship continued after Mr. Scott's mail route was changed.

18. All assistance Mr. Scott provided to Mrs. Hodges was given freely and without expectation of any remuneration.

19. When Mrs. Hodges moved to Hungary she paid the expenses of Mr. Scott and another friend, Keith Antognoni, to assist her in her move.

20. Mr. Scott secured a T-Mobile phone account that had unlimited international calling on his plan so that he and Mrs. Hodges could continue to communicate.

21. At all times relevant to this action up until Mrs. Hodges death, Mrs. Hodges received monthly pension check(s), which were directly deposited into her United States BB&T bank account.

22. After Mrs. Hodges moved to Hungary, she began experiencing difficulties gaining access to the money in her U.S. bank account.

23. Beginning in November of 2015, Mrs. Hodges began to inquire via BB&T online customer service how she could transfer significant funds to her bank account in Hungary. Attached hereto as Exhibit I is a series of communications carried on through the BB&T website seeking information on how to transfer her funds.

24. The final communication in this conversation with BB&T, made in November of 2016, made it clear that significant transfers could only be made to other U.S. banks. See Exhibit 1.

25. During the same period Mrs. Hodges attempted to write checks to her nephew, but he was unable to cash the checks. She complained to BB&T about this as well.

26. As the online conversations were ending with BB&T, Mr. Scott, who continued to call Mrs. Hodges once or twice a week, told Mrs. Hodges that if she would send him checks written on her U.S. account, he would deposit them in his bank and arrange the international transfer to her accounts.

4

27. Based on their long history and friendship, Mrs. Hodges trusted Mr. Scott to do as he promised and wrote him two checks for $25,000 each (constituting the "Funds), dated March 21, 2017 and May 30, 2017. Copies of these checks are attached hereto as Exhibits 2 and 3.

28. Mr. Scott received and cashed these checks.

29. While the early conversations were by telephone call, communications about the situation also occurred via text message (with the assistance of her nephew Gergo Horvath using her phone). Attached as Exhibit 4 is the string of text messages sent between Mrs. Hodges' and Mr. Scott's phones spanning the time from May 9, 2017 until July 5, 2017.

30. The banking information, including information required to wire the funds, was sent to Mr. Scott via text message. See Exhibit 4.

31. On May 31, 2017, Mr. Scott was sent a text message from Mrs. Hodges' phone with a picture of the May 30, 2017 check and the message: "I sent it today. Please transfer when you got it." See Exhibit 4.

32. On June 22, 2017 in response to another text message of the wiring information, Mr. Scott wrote: "I will transfer the money on Wednesday, my next day off." See Exhibit 4.

33. Mr. Scott did not transfer the money that Wednesday or on any day thereafter.

34. Shortly thereafter, all communication from Mr. Scott ceased.

35. Mr. Scott has retained all of the $50,000.00, refusing to pay any of it to Mrs. Hodges or to her estate.

## Count I – Breach of Fiduciary Duty

36. The Administrator re-alleges and restates the allegations of paragraphs 1 through 35, above as though fully rewritten herein.

37. As a result of the agreement for the Defendant to hold and transfer funds belonging to Ms. Hodges, the Defendant owed to Mrs. Hodges a fiduciary duty of loyalty and to hold and dispose of such funds in accordance with the directions of Mrs. Hodges.

38. The Defendant, by withholding such funds from Mrs. Hodges and her personal representative, the Administrator, and converting the same to his own use and benefit has breach that fiduciary duty and an embezzlement of such funds.

39. As a direct and proximate result of such breach, Mrs. Hodges and the Administrator have been damaged in the sum and amount of Fifty Thousand Dollars ($50,000.00).

40. The actions of the Defendant in this regard, specifically taking advantage of a woman of advanced years who relied on his friendship, were wanton and willfully undertaken without regard to the rights of Mrs. Hodges.

41. The debt complained of in this Count I constitutes a non-dischargeable obligation pursuant to 11 U.S.C. §523(4) and (6).

## Count II – Conversion

42. The Administrator re-alleges and restates the allegations of paragraphs 1 through 35, above as though fully rewritten herein.

43. The Fund (as described above) was the sole legal and equitable property of Mrs. Hodges.

44. The Defendant has converted the Fund to his own use and benefit in interference with the rights of Mrs. Hodges and/or her estate.

45. The actions of the Defendant in this regard, specifically taking advantage of a woman of advanced years who relied on his friendship, were wanton and willfully undertaken without regard to the rights of Mrs. Hodges.

46. The debt complained of in this Count II constitutes a non-dischargeable obligation pursuant to 11 U.S.C. §523(4) and (6).

### Count III – Fraud

47. The Administrator re-alleges and restates the allegations of paragraphs 1 through 35, above as though fully rewritten herein.

48. At the time the Defendant came in to the possession of the Funds, and before, the Defendant represented that he would deposit the Funds to his personal account and arrange to have the same wired or otherwise transmitted to Mrs. Hodges.

49. At the time of such representations, and specifically at the time the Defendant came into possession of the Funds he had the present intention of withholding such funds from Mrs. Hodges and converting those funds to his own use and benefit.

50. Mrs. Hodges delivered the funds to the Defendant in reliance on such representations.

51. Given the personal history between the parties, the reliance of Ms. Hodges on those representations were justifiable and reasonable.

52. As a result of such representations and reliance Mrs. Hodges and the Administrator have been damaged in the sum and amount of Fifty Thousand Dollars ($50,000.00).

53. The actions of the Defendant in this regard, specifically taking advantage of a woman of advanced years who relied on his friendship, were wanton and willfully undertaken without regard to the rights of Mrs. Hodges.

54. The debt complained of in this Count III constitutes a non-dischargeable obligation pursuant to 11 U.S.C. §523(2) and (6).

WHEREFORE the Plaintiff prays that this Court make and enter such orders as necessary and proper to grant to the Plaintiff the following relief:

1. Based on Count I above:

    a. judgment in the amount of Fifty Thousand Dollars ($50,000.000) in and for compensatory damages;

    b. One Hundred Thousand Dollars ($100,000.00) in and for punitive damages;

    c. An award of the fees and costs expended in this behalf, including an award of reasonable attorney's fees; and

    d. A determination by this court that the debt complained of in Count I is non-dischargeable in this bankruptcy matter; or in the alternative

2. Based on Count II above:

    a. judgment in the amount of Fifty Thousand Dollars ($50,000.000) in and for compensatory damages;

    b. One Hundred Thousand Dollars ($100,000.00) in and for punitive damages;

    c. An award of the fees and costs expended in this behalf, including an award of reasonable attorney's fees; and

    d. A determination by this court that the debt complained of in Count II is non-dischargeable in this bankruptcy matter; or in the alternative

3. Base on Count III above:

  a. judgment in the amount of Fifty Thousand Dollars ($50,000.000) in and for compensatory damages;

  b. One Hundred Thousand Dollars ($100,000.00) in and for punitive damages;

  c. An award of the fees and costs expended in this behalf, including an award of reasonable attorney's fees; and

  d. A determination by this court that the debt complained of in Count III is non-dischargeable in this bankruptcy matter; or in the alternative

           SCOTT H. DONOVAN, Administrator
           By Counsel

/s/Timothy J. McGary
Timothy J. McGary, #21208
Counsel for Plaintiff
8609 Westwood Center Drive Suite 203
Vienna, VA 22182-7521
(703) 636-7107
(703) 636-7108 (Fax)
Email: tjm@mcgary.com